O

# United States District Court
# Central District of California

| | |
|---|---|
| JANE DOE et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES et al., <br><br> Defendants. | Case № 2:20-cv-02748-ODW (PVCx) <br><br> **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS [55]** |

## I.      INTRODUCTION

Plaintiffs Jane Doe ("S.C.") and her minor sister, M.S., through her guardian ad litem, bring this action against Defendants County of Los Angeles, Sergeant Mark Marbach ("Sergeant Marbach"), Detective Luis Torres, Detective Jon Livingston, and Detective Erich Marbach ("Detective Marbach") (collectively, "Defendant Officers"), alleging ten claims arising from the Defendant Officers' application for and execution of a search warrant at Plaintiffs' residence in Lancaster, California ("Residence"). (First. Am. Compl. ("FAC"), ECF No. 42.)  Defendants now move for summary judgment or, in the alternative, partial summary judgment, on Plaintiffs' ten claims. (Mot. Summ. J. ("Mot." or "Motion"), ECF No. 55.)  For the reasons discussed below, the Court **GRANTS IN PART** Defendants' Motion as to Plaintiffs' claims under

42 U.S.C. § 1983, and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state law claims.[1]

## II. FACTUAL BACKGROUND

On May 24, 2019, non-party Larry Collier Sr. reported to the Los Angeles Sheriff's Department ("LASD") that, on April 5, 2019, his son, non-party Larry Collier Jr., had threatened him with a gun. (Defs.' Statement Undisputed Facts ("DSUF") 2, ECF No. 55-4.) Detective Marbach of the LASD was assigned to investigate. (DSUF 3.) During his investigation, Detective Marbach learned and verified that Collier Jr. lived at the Residence. (DSUF 7–8.)

On July 23, 2019, Detective Marbach applied for, and the court authorized, a search warrant for the Residence and an arrest warrant for Collier Jr. (DSUF 9, 14.) The Court authorized a search of the Residence for, among other things, the gun used in the alleged crime on April 5, 2019, and paraphernalia tending to show Collier Jr.'s affiliation with the 83rd Street Hoover Crip criminal street gang. (DSUF 10, 12, 14.)

On July 25, 2019, Collier Jr. was arrested pursuant to the warrant when he appeared in court on a different criminal matter. (DSUF 15.) Afterwards, at approximately noon, officers—including the Defendant Officers—executed the search warrant at the Residence. (DSUF 16, 18.)

After Detective Marbach knocked and announced multiple times that the officers were at the Residence to serve a search warrant, he heard a female voice, now known to be S.C., state "don't open the door." (DSUF 20–22.) Sergeant Marbach believed the unknown occupants of the Residence were being intentionally uncooperative and ordered the use of breaching tools to access the Residence. (DSUF 23–24.) Upon entering the house, the officers saw S.C., who was naked, at the top of the stairs. (DSUF 25.) S.C. was also menstruating at the time. (Pls.' Statement Genuine Disputes ("PSGD") 25, ECF No. 58.)

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

The parties dispute much of what follows, and the Court recounts the facts and draws reasonable inferences in the light most favorable to Plaintiffs.[2] *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiffs contend that S.C. told the officers that she wanted to get a towel, and the officers, who were pointing guns at her, refused this request.[3] (PSGD 25, 31.) However, within thirty seconds of entering the Residence, Sergeant Marbach directed deputies to look for something with which to cover S.C. (*See* DSUF 31; *see also* Knock and Announce Audio Recording.)

S.C. repeatedly screamed and demanded to see the search warrant. (DSUF 25; Knock and Announce Audio Recording.) Sergeant Marbach ordered Detective Torres to place S.C. in handcuffs and detain her in a patrol car because S.C. was preventing the deputies from clearing the entire Residence, thus posing a security risk.[4] (DSUF 28.)

The officers wrapped a comforter around S.C. while handcuffing her. (*See* Not. Lodging Exs. ISO Mot., Ex. I[5] ("Cell Phone Video").) Plaintiffs contend that, while handcuffing S.C., the officers put S.C. in a chokehold. (PSGD 29.)

---

[2] However, the Court notes that, in disputing Defendants' facts, Plaintiffs rely almost entirely on S.C.'s deposition testimony, uncorroborated by citations to M.S.'s deposition testimony or any of the audio and video footage of this encounter. (*See* PSGD;) *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (holding "uncorroborated and self-serving" testimony insufficient to raise genuine issues of fact and defeat summary judgment). Nonetheless, the Court accepts S.C.'s testimony for purposes of resolving the Motion.

[3] Although Defendants submit an audio recording of the warrant execution, it is, at times, difficult to hear what the parties say over the sound of the breaching tools and other noises. (*See* Not. Lodging Exs. ISO Mot., Ex. H ("Knock and Announce Audio Recording"), ECF No. 55-5.)

[4] Plaintiffs dispute this fact on the basis that S.C. did not prevent deputies from clearing the house because some deputies were able to clear "other rooms." (PSGD 28.) However, this says nothing about whether S.C. prevented deputies from clearing the remainder of the house, including the upstairs. Moreover, the Knock and Announce Audio Recording reveals that S.C. twice stated, "I'm not going to go nowhere." (Knock and Announce Audio Recording); *see also A.G., 1-4 v. City of Fresno*, 804 F. App'x 701, 702 (9th Cir. 2020) (citing *Scott*, 550 U.S. at 381) (explaining the court may "view[] the facts in the light depicted by the video[]" to the extent that it "blatantly contradict[s]" one party's version of the incident).

[5] Exhibit I includes video footage of S.C. while S.C. is naked. The Court **ORDERS** Ex. I, which Defendants lodged at ECF No. 55-5, to be sealed.

After Detective Torres led S.C. outside, a breeze started to open the comforter around S.C., and S.C. dropped to the ground in an effort to remain clothed. (PSGD 33, 40.) Several officers then jumped on S.C. (*Id.*) Deputies kneeled on S.C., placed a hobble on S.C.'s ankles, and dragged S.C. across the grass by her feet and hair. (PSGD 37, 39; DSUF 38.) Once in the patrol car, S.C. was provided with clothes and a tampon. (PSGD 43.) S.C. used her hands to smear menstrual blood inside of the car's windows. (DSUF 44.)

Detective Marbach subsequently arrested S.C. for obstructing and delaying the execution of the search warrant. (DSUF 47.) The District Attorney's Office filed criminal charges and then later dismissed the case against S.C. (DSUF 48–49.)

During the execution of the search warrant, M.S. was crying hysterically. (DSUF 27.) Non-party Detective Germansen had M.S. sit outside on a bench for thirty to sixty minutes while the officers cleared and searched the house and until her aunt arrived. (DSUF 52, 54.) Plaintiffs contend that an unidentified officer pointed a gun at M.S. (PSGD 53.)

Plaintiffs filed this civil suit against Defendants, asserting ten claims.[6] (FAC ¶¶ 26–70.) Plaintiffs assert five claims pursuant to 42 U.S.C. § 1983: (1) unreasonable use of force (claim one); (2) unreasonable seizure during the execution of a search warrant (claim two); (3) unlawful arrest (claim three); (4) judicial deception (claim four); and (5) malicious prosecution (claim eight). (*Id.* ¶¶ 26–43, 60–63.) In addition, Plaintiffs assert five claims under state law: (1) battery (claim five); (2) negligence/negligent infliction of emotional distress ("NIED") (claim six); (3) intentional infliction of emotional distress ("IIED") (claim seven); (4) malicious prosecution (claim nine); and (5) violation of the Bane Act, Cal. Civ.

---

[6] Claims one through four are brought by both Plaintiffs against the Defendant Officers. (FAC ¶¶ 26–43.) Claims five through seven, and ten, are brought by both Plaintiffs against all Defendants. (*Id.* ¶¶ 44–59, 68–70.) Claims eight and nine are brought by S.C. against the Defendant Officers. (*Id.* ¶¶ 60–67.)

Code section 52.1 (claim 10). (*Id.* ¶¶ 44–59, 64–70.) Defendants now seek summary judgment on all ten claims.[7]

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott*, 550 U.S. at 378; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods.*,

---

[7] Plaintiffs object to certain facts presented in Defendants' Separate Statement of Undisputed Facts. (*See* PSGD.) Evidentiary objections based "on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Moreover, here, Plaintiffs object to Defendants' facts, not evidence. (*See* PSGD.) Thus, the Court disregards Plaintiffs' objections.

818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment, as is "uncorroborated and self-serving" testimony. *Villiarimo*, 281 F.3d at 1061; *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants move for summary judgment on all ten of Plaintiffs' claims. (Mot.) Defendants argue that the Defendant Officers are entitled to qualified immunity and that Plaintiffs' claims otherwise fail. (*Id.* at 9–22.) Plaintiffs argue that the Defendant Officers are not entitled to qualified immunity and that genuine disputes of material fact preclude summary judgment for Defendants on each claim. (Opp'n 10–17, ECF No. 56.)

### A. Section 1983 Claims

"The doctrine of qualified immunity insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority." *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001). A government official is entitled to qualified immunity unless the plaintiff raises a genuine issue of fact showing (1) "a violation of a constitutional right," and (2) that the right was "clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks omitted). A court may exercise "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

The Court exercises its discretion to begin with the second prong of the qualified immunity analysis: whether the constitutional right that the Defendant Officers allegedly violated was clearly established at the time of the violation. *See id.*

"The 'clearly established' inquiry is a question of law that only a judge can decide," *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017), and Plaintiffs bear "the burden of demonstrating that the right at issue was clearly established," *Kramer v. Cullinan*, 878 F.3d 1156, 1164 (9th Cir. 2018).

"For a constitutional right to be 'clearly established' its 'contours [must be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* at 1163 (alteration in original). "[T]he focus is on whether the officer had fair notice" that their actions violated a constitutional right and were unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). In determining whether this standard is met, a court considers whether there are "cases of controlling authority" in the plaintiff's jurisdiction at the time of the incident "which clearly established the rule on which they seek to rely," or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that [their] actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017); *see also J. K. J. v. City of San Diego*, 42 F.4th 990, 1000 (9th Cir. 2021) (holding the relevant inquiry is whether "the violative nature of [the defendant's] *particular* conduct is clearly established . . . in light of the *specific context* of the case." (emphases and alteration in original)). Although "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Here, Plaintiffs argue that the Defendant Officers are not entitled to qualified immunity for Plaintiffs' claims under the Fourth Amendment because, "[a]s far back as 1963, Ninth Circuit law clearly established a female detainee's right to bodily privacy." (Opp'n 11.) Because the only right that Plaintiffs identify in their qualified immunity argument is a female detainee's right to bodily privacy, (*id.* at 11–12), the Court focuses its analysis on this right.

To begin with, as a practical matter, it is not clear how Plaintiffs could meet their burden of demonstrating that the Defendant Officers' conduct violated a clearly established constitutional right that is "'particularized' to the facts of [this] case," *see White*, 580 U.S. at 79, where their argument fails entirely to address the facts of this case and the Defendant Officers' conduct, (Opp'n 11–12). Moreover, Plaintiffs' argument that the Defendant Officers violated a clearly established right to bodily privacy does not address whether the Defendant Officers are entitled to qualified immunity with respect to M.S.'s claim for unreasonable seizure, (FAC ¶¶ 36–37), and Plaintiffs' remaining claims under section 1983 for unreasonable use of force, unlawful arrest, judicial deception, and malicious prosecution, (*id.* ¶¶ 26–35, 38–43, 60–63). Thus, with respect to those claims, Plaintiffs fail to carry their "burden of demonstrating that the right at issue was clearly established." *Kramer*, 878 F.3d at 1164.

Additionally, as Plaintiffs define it, a female detainee's right to bodily privacy is far too generalized to constitute a clearly established right for purposes of qualified immunity here. Plaintiffs cite two cases in which the Ninth Circuit recognized a right to bodily privacy, each of which involve scenarios where officers observed women in the bathroom. *See Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992) (holding female parolee had clearly established right to bodily privacy where male parole officer entered bathroom stall while parolee was partially clothed); *see also Ioane v. Hodges*, 939 F.3d 945, 957 (9th Cir. 2018) (holding suspect's wife had clearly established right to bodily privacy where female agent executing search warrant accompanied and observed suspect's wife while she used the toilet). However, "[t]he Supreme Court has 'repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) (citing *Ashcroft*, 563 U.S. at 742); *see also White*, 580 U.S. at 79 ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of

generality.'"). With this guidance in mind, *Sepulveda* and *Ioane* are better understood as establishing narrower rights than that of a female detainee's right to bodily privacy in general. Rather, at least for purposes of the Court's qualified immunity analysis here, *Sepulveda* and *Ioane* establish the right to not be observed while going to the bathroom in particular contexts. Those scenarios are not at issue here, and Plaintiffs fail to identify any authority establishing a constitutional right that is particularized to the facts of this case and which puts the unlawfulness of the Defendant Officers' actions here "beyond debate." *See Ashcroft*, 563 U.S. at 741.

Although not cited in support of their qualified immunity argument, Plaintiffs elsewhere rely on *Franklin v. Foxworth*. (Opp'n 10–11 (citing *Franklin*, 31 F.3d 873, 876–77 (9th Cir. 1994)).) Thus, the Court also considers whether *Franklin* constitutes clearly established law that would have put the Defendant Officers on notice that their actions here were unlawful. In *Franklin*, the Ninth Circuit found that officers executing a search warrant acted unconstitutionally by "removing a gravely ill and semi-naked man from his sickbed without providing any clothing or covering, and then by forcing him to remain sitting handcuffed in his living room for two hours." 31 F.3d at 876–77. The Ninth Circuit noted that the man "presented little risk of danger to [the officers], that he presented absolutely no risk of flight, and that it was highly unlikely that he could interfere with their search in any way." *Id.* at 877. *Franklin* is inapposite. Here, unlike in *Franklin*, the Defendant Officers sought quickly to cover S.C., who was actively preventing the deputies from clearing the area subject to the search warrant. (DSUF 28, 31; Knock and Announce Audio Recording.) Plaintiffs also cite *Los Angeles County v. Rettele*, where the Supreme Court determined officers executing a search warrant acted *reasonably* when they ordered naked residents out of bed and held them at gunpoint for one to two minutes, while verifying that no weapons were present and that other persons were not close by. *See* 550 U.S. 609, 611–14 (2007). Neither *Franklin*, nor *Rettele*, clearly establish that it is unlawful for officers executing a search warrant to detain and cover with a

blanket a naked, menstruating woman when she is preventing the officers from clearing the area to be searched. At best, the consensus of these cases is that detaining a naked woman may violate a constitutional right to bodily privacy in some circumstances, but not in others. Thus, if anything, Plaintiffs' cited authority demonstrates that the violative nature of the Defendant Officers' particular conduct is *not* clearly established. *See J. K. J.*, 42 F.4th at 1000.

Accordingly, Plaintiffs fail to carry their "burden of demonstrating that the right at issue was clearly established," *Kramer*, 878 F.3d at 1164, and the Court finds that the Defendant Officers are entitled to qualified immunity. The Court **GRANTS IN PART** Defendants' Motion as to Plaintiffs' claims under 42 U.S.C. § 1983.

**B.  State Law Claims**

Plaintiffs also bring five claims under state law: (1) battery (claim five); (2) negligence/NIED (claim six); (3) IIED (claim seven); (4) malicious prosecution (claim nine); and (5) violation of the Bane Act, Cal. Civ. Code section 52.1 (claim 10). (*Id.* ¶¶ 44–59, 64–70.)

When a federal court has dismissed all claims over which it has original jurisdiction, it may, at its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009); *Lima v. U.S. Dep't of Educ.*, 947 F.3d 1122, 1128 (9th Cir. 2020) (holding district court did not abuse its discretion by declining to exercise supplemental jurisdiction over state law claims after granting summary judgment in favor of defendant on all federal claims). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Because the Court dismisses all of Plaintiffs' federal claims, it declines to exercise supplemental jurisdiction over the remaining claims brought under state law. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims for battery, negligence/NIED, IIED, malicious prosecution, and violation of the Bane Act.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment, (ECF No. 55), as to Plaintiffs' first, second, third, fourth, and eighth claims brought under 42 U.S.C. § 1983. In addition, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' remaining state law claims. The Court will issue a judgment.

**IT IS SO ORDERED.**

January 17, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**